# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA BLANCO, | Case No. 1:14-CV-2046-LJO-EPG |
| Plaintiff, | |
| v. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS. |
| COUNTY OF KINGS, *et al*., | |
| Defendants. | (Docs. 18-19) |

Plaintiff Jessica Blanco filed this action against Defendants City of Lemoore ("the City"), Lemoore Police Department Officer Kevin Cosper ("Cosper") in his official and private capacity, the County of Kings ("the County"), Kings County Sheriff's Deputy Maribel Mixon ("Mixon") in her official and private capacity, and Does 1-10.  Plaintiff's suit stems from her December 19, 2013 arrest and booking in the County jail facility, and alleges violations of her First, Fourth, Fifth and Fourteenth Amendment rights under 42 U.S.C. §1983, as well as various claims under state law. Now before the Court are the respective Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Mixon and the County (Doc. 18), and Cosper and the City (Doc. 19). This matter is suitable for disposition without oral argument.  *See* Local Rule 230(g).  For the reasons set forth below, the Court grants in part and denies in part Defendants' Motions.

1

**BACKGROUND**

2

**I.  FACTUAL ALLEGATIONS[1]**

3

Plaintiff is a female resident of Kings County.  (First Amended Complaint ("FAC") ¶ 6,

4

Doc. 16).  On December 19, 2013, at approximately 3:30 a.m., Plaintiff was driving somewhere in

5

Lemoore.  (*Id.* ¶ 11).  She was stopped by Cosper, a male police officer, for a motor vehicle

6

registration violation.  (*Id.* ¶¶ 10, 11).  After a search during which a controlled substance was

7

discovered, Cosper arrested Plaintiff and took her to the County jail, located in the city of Hanford.

8

(*Id.* ¶ 11 ).  The jail is operated by Kings County.  (*Id.*).  En route to the jail, Cosper "attempted to

9

elicit incriminating statements from Plaintiff, which she largely refused" to provide.  (*Id.*).

10

When they arrived at the county jail, Cosper turned Plaintiff over to Mixon for processing.

11

(*Id.* ¶ 12).  Mixon, a female, conducted a routine strip search of Plaintiff.  (*Id.*).  "On information

12

and belief, this strip search consisted of Plaintiff being compelled to remove all her clothing for

13

inspection and search, as well as a body cavity search."  (*Id.*).  Initially, Mixon conducted the

14

search away from male personnel, and the search was "routine in nature."  (*Id.*).

15

At some point during the search, Mixon discovered an additional small amount of a

16

controlled substance on Plaintiff.  (*Id.* ¶ 13).  While Plaintiff was still undressed, Mixon summoned

17

Cosper, who had been outside the strip search area.  (*Id.*).  Cosper came into the strip search area

18

and began interrogating Plaintiff while she was unclothed, "in an attempt to gain further

19

incriminating information from her."  (*Id.*).  The actions of Mixon and Cosper "caused Plaintiff to

20

suffer severe emotional shock and humiliation, with the resultant stress."  (*Id.*).

21

On or around June 17, 2014, Plaintiff filed an administrative claim pursuant to California

22

law regarding the matters described above.  (*Id.* ¶ 17).  The County denied this claim on August 15,

23

2015, and the City denied the claim on August 6, 2014.  (*Id.*).

24

25

---

[1] These background facts are drawn from Plaintiff's First Amended Complaint (Doc. 16), the truth of which the Court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed the original complaint with this Court on December 18, 2014.  (Doc. 1).  The FAC, filed July 15, 2015, sets forth the following claims against all Defendants: (1) violation of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; (2) violation of Plaintiff's right to privacy under the California Constitution; (3) intentional infliction of emotional distress under California law; and (4) negligent infliction of emotional distress under California law.  (Doc. 16).  On these bases, Plaintiff seeks general damages of not less than $1,000,000, damages for "mental anguish and emotional distress," and punitive damages against Mixon and Cosper.  (*Id.*).

In their respective Motions, Mixon and the County seek dismissal of Plaintiff's second, third, and fourth causes of action (Doc. 18), and Cosper and the City seek dismissal of all causes of action and move to strike Plaintiff's prayer for punitive damages (Doc. 19).  Plaintiff opposed both Motions (Docs. 21, 22).  Defendants each submitted responses.  (Docs. 23, 24).  The matter is now ripe for review.

### LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim

1  showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the

2  . . . claim is and the grounds upon which it rests."  A plaintiff is required to allege "enough facts to

3  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

4  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

5  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability

7  requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

8  *Id.* (quoting *Twombly*, 550 U.S. at 556).

9      While Rule 8(a) does not require detailed factual allegations, "it demands more than an

10  unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading

11  is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of

12  a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals

13  of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

14  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or

15  that the defendants have violated the ... laws in ways that have not been alleged[.]"  *Associated*

16  *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  In

17  practice, "a complaint . . . must contain either direct or inferential allegations respecting all the

18  material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550

19  U.S. at 562.  In other words, the complaint must describe the alleged misconduct in enough detail to

20  lay the foundation for an identified legal claim.

21      "Dismissal without leave to amend is proper if it is clear that the complaint could not be

22  saved by amendment."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  To the

23  extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the

24  plaintiff leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911

25  F.2d 242, 247 (9th Cir. 1990) (citations omitted).

4

**DISCUSSION**

**I.   FIRST CAUSE OF ACTION: 42 U.S.C. § 1983**

The first cause of action is brought against Mixon, the County, Cosper, the City, and Does 1-10, pursuant to 42 U.S.C. §1983, which provides a federal cause of action for plaintiffs who have been deprived of constitutional rights under the color of law.  For each defendant that she seeks to hold liable under § 1983, Plaintiff must allege: (1) this defendant was acting under color of state law at the time the complained-of act was committed; and (2) the defendant's conduct deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986*)*; *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

Plaintiff also must establish causation, by demonstrating that each defendant personally was involved in the constitutional violation, or that there was a sufficient causal connection between the defendant's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (en banc).  "The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

Plaintiff's § 1983 claim is entitled "42 U.S.C. § 1983 – Unreasonable Search and Seizure and Due Process Violation).  (Doc. 16, at 2.)  The body of the claim more broadly alleges "[t]he actions of Defendants and each of them that morning were designed to retaliate against Plaintiff for her invoking her right to remain silent during the questioning by Defendant Cosper that morning, in violation of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution."  (*Id.* ¶ 14).  Mixon and the County do not address this cause of action in their Motion.  (Doc. 18).  Cosper and the City seek dismissal of this cause of action in its entirety as it relates to them.  (Doc. 19-1, at 4-7).  The Court now considers whether the factual allegations in the FAC can support §

1  1983 claims under the First, Fourth, Fifth, and Fourteenth Amendments, with regard to Cosper[2] and

2  the City.

3      **A.  FIRST AMENDMENT CLAIM**

4      The body of Plaintiff's first cause of action invokes the First Amendment, and appears to

5  suggest that Defendants retaliated against Plaintiff for exercising her rights under the First

6  Amendment to remain silent while she was in the car with Cosper.  (*See* Doc. 16 ¶¶ 14-15).

7  Cosper and the City argue that the FAC fails to state a claim under the First Amendment. (Doc. 19-

8  1, at 7.)  Plaintiff failed to respond to this argument. (*See* Doc. 21).

9      Generally, the First Amendment protects both "the voluntary public expression of ideas"

10  and also "a concomitant freedom not to speak publicly."  *See Harper & Row, Publishers, Inc. v.*

11  *Nation Enters.*, 471 U.S. 539, 559 (1985).  "To demonstrate retaliation in violation of the First

12  Amendment, [Plaintiff] must ultimately prove first that [Defendants] took action that would chill or

13  silence a person of ordinary firmness from future First Amendment activities.... The second

14  requirement is [that Plaintiff] must ultimately prove that [Defendants'] desire to cause the chilling

15  effect was a but-for cause of [Defendants'] action."  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d

16  892, 900-01 (9th Cir. 2008) (quoting *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th

17  Cir. 2006)).  The FAC falls far short of this mark.  All the FAC alleges is that (1) Cosper asked

18  Plaintiff questions in the car, which she "largely refused" to answer (Doc. 16 ¶ 11); and (2) Cosper

19  questioned Plaintiff again after Mixon found additional contraband on Plaintiff's person (*Id*. ¶ 13).

20  Nothing except pure speculation connects the second round of questioning to Plaintiff's refusal to

21  fully participate in the first.  The fact that the second round of questioning was allegedly conducted

22  while Plaintiff was nude does not alter this conclusion, as the nature of the second questioning

23  cannot supplant the absence of allegations connecting that round of questioning to her invocation of

24

25  _____
[2] As the FAC alleges that Cosper was acting in his official capacity as a police officer employed by the City when the complained-of acts were committed, (Doc. 16 ¶ 10), and therefore acting under the color of state law, the first element of a § 1983 claim is alleged sufficiently with regard to Cosper.

First Amendment rights.

Accordingly, the Court will GRANT the motion to dismiss Plaintiff's §1983 First Amendment claim as it relates to Cosper and the City.  Plaintiff has requested leave to amend. (Doc. 21, at 3.)  As set forth below, Plaintiff will be afforded one opportunity to amend her complaint to cure any deficiencies.

## B.  FIFTH AMENDMENT CLAIM

Plaintiff's Fifth Amendment claim appears to arise from the same conduct upon which she based her First Amendment claim—that she attempted to assert her Fifth Amendment right against incrimination by remaining silent while she was in the car with Cosper, and that Cosper subsequently re-interrogated her while she was naked in retaliation for her invocation of her right to remain silent.  (Doc. 16 ¶¶ 13-15).  Here, the FAC explicitly states "[w]hile driving to jail, Defendant Cosper attempted to elicit incriminating statements from Plaintiff, which she largely refused (5th Amendment)."  (*Id.* ¶ 11).  The Fifth Amendment privilege protects an individual "against being involuntarily called as a witness against [herself] in a criminal proceeding" and moreover privileges her "not to answer official questions put to [her] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [her] in future criminal proceedings."  *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).  Nevertheless, the Supreme Court has held that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against [herself] in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (emphasis in original); *Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009) ("the Fifth Amendment was not violated unless and until allegedly coerced statements were used against the suspect in a criminal case.").

Cosper and the City seek dismissal of Plaintiff's § 1983 Fifth Amendment claim against them because Plaintiff has not set forth allegations that she was compelled to be a witness against herself in a criminal case, and therefore her Fifth Amendment rights were not violated.  (Doc. 19-1,

7

at 7).  Although the FAC does explicitly state that Plaintiff asserted her Fifth Amendment right to remain silent while she was in the car with Cosper, it does not allege that Plaintiff was compelled to be a witness in any subsequent criminal case against herself.  Under *Chavez*, the facts in the FAC are insufficient to allege a plausible violation of Plaintiff's Fifth Amendment rights.  538 U.S. at 770.  Even if Cosper did attempt to re-interrogate Plaintiff while she was unclothed in retaliation for her silence in the car, this would not be a violation of Plaintiff's Fifth Amendment rights unless he obtained statements from her that were then used against her in criminal proceedings.  *See id.* at 767-68 (finding no Fifth Amendment violation where the statements obtained as a result of coercive questioning were never admitted as testimony against the suspect in a criminal case).  Plaintiff has made no such allegation, nor does her opposition suggest, that her statements were used against her in a criminal case.  (*See* Docs. 16, 21).  Therefore, the Court will GRANT the Motion to Dismiss Plaintiff's § 1983 claims against Cosper and the City insofar as it relates to the Fifth Amendment.  In an abundance of caution, the Court grants Plaintiff leave to amend this claim.

## C.  FOURTH AMENDMENT CLAIM

The Fourth Amendment provides that the "right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated ..." *Heien v. N. Carolina,* 135 S. Ct. 530, 536 (2014).  Here, while the FAC is not entirely clear, it appears Plaintiff is alleging that both her arrest by Cosper and the strip search conducted by Mixon in Cosper's presence violated her Fourth Amendment rights.  (*See* Doc. 16 ¶¶ 11-15).  However, in her response to Cosper and the City's Motion, Plaintiff concedes that her arrest by Cosper was lawful.  (Doc. 22, at 4).  Consequently, the Court's analysis of her Fourth Amendment claim need only address the FAC's

//

//

//

//

1   allegations of events that took place at the county jail facility.  These allegations can be

2   summarized as follows: Mixon[3] conducted the strip search of Plaintiff after Cosper had turned over

3   control of Plaintiff to Mixon.  (Doc. 16 ¶ 12).  Although the search was initially conducted away

4   from male personnel, Mixon called for Cosper to enter the search area after Mixon discovered "a

5   small quantity of a controlled substance" on Plaintiff.  (*Id.* ¶¶ 12-13).  Cosper then entered the

6   search area and resumed his interrogation of Plaintiff "while she was in a state of undress, naked."

7   (*Id.* ¶ 13).

8          Plaintiff has characterized the events alleged in the FAC as a "cross-gender strip search."

9   (Doc. 16 ¶13; Doc. 22, at 4).  A strip search conducted by a person of the opposite gender normally

10  is considered a violation of the Fourth Amendment.  *Byrd v. Maricopa County Sheriff's Dept.*, 629

11  F.3d 1135, 1146 (9th Cir. 2011) (concluding that the "recurring theme" in a "litany of cases over

12  the last thirty years," is that "cross-gender strip searches in the absence of an emergency violate an

13  inmate's right under the Fourth Amendment to be free from unreasonable searches.").  It is less

14  clear whether the Fourth Amendment protects an individual from being viewed by a member of the

15  opposite gender while a strip search is ongoing, and there is no physical contact between members

16  of opposite genders.  *See Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) (declining to find a

17  Fourth Amendment violation where the inmate was subject to "routine unclothed searches by

18  officials of the opposite sex" and the "viewing of [his] unclothed [body] by officials of the opposite

19  sex"); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir 1988) (finding no Fourth Amendment

20  violation where routine strip search procedures on a male inmate were occasionally conducted in

21  the view of female guards); *Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985) (upholding a

22

23  _____

    [3] As mentioned above, Mixon does not move to dismiss the § 1983 claim, so the Court need not address her potential liability under the Fourth Amendment at this time. Moreover, Plaintiff does not contend that the initial strip search by Mixon was a violation of her Fourth Amendment rights, as Plaintiff concedes in the FAC that the search was "intended to prevent the introduction of any contraband items into the jail facility and to maintain the health and welfare of jail inmates and personnel."  (Doc. 16 ¶ 12); *see also Florence v. Bd. of Chosen Freeholders of County of Burlington,* 132 S.Ct. 1510, 1523 (2012) (finding that a correctional facility policy of conducting strip searches of persons arrested for minor offenses as a routine part of the intake process "struck a reasonable balance between inmate privacy and the needs of the institutions" and did not violate the Fourth Amendment). The Court expresses no opinion as to Mixon's potential liability for any conduct that took place once Cosper was present in the strip search area.

24

25

prison's policy of assigning female officers to posts where the female officers could occasionally view male inmates in various states of undress); *Whittington v. California Dep't of Corr. & Rehab.*, 2010 WL 761314, at *2 (N.D. Cal. Mar. 3, 2010) (male plaintiff did not adequately plead a Fourth Amendment violation where he was strip searched in front of female guards and was required on two occasions to shower in an area where it was possible for female guards to view him); *Meador v. California Corr. Inst.*, 2009 WL 3486673, at *2 (E.D. Cal. Oct. 23, 2009) report and recommendation adopted sub nom. *Meador v. California Corr. Inst.*, 2009 WL 5202576 (E.D. Cal. Dec. 24, 2009) (allegation that male inmate was strip searched in close proximity to a female officer was not a cognizable violation of the Fourth Amendment).

Nevertheless, even if the Fourth Amendment protects against the presence of an opposite-gender individual while an individual of the same gender is conducting a strip search, the allegations in the FAC do not trigger any such protection.  At this juncture, the Court is not persuaded that the FAC plausibly alleges that Cosper was involved in the "search" of Plaintiff, as contemplated by the Fourth Amendment.  The FAC alleges that Cosper "turned over control" of Plaintiff to Mixon, who conducted the strip search; the FAC does <u>not</u> allege that Cosper actually participated in the search of Plaintiff, nor that Cosper was present while any strip search or body cavity search was taking place.  (Doc. 19-1, at 6; Doc. 16 ¶ 13).  The FAC only plausibly suggests that Cosper entered the strip search area <u>after</u> Mixon completed the search of Plaintiff, because it alleges that Mixon beckoned for Cosper to enter after she found contraband on Plaintiff's person. (Doc. 16 ¶ 13).  Cosper's mere presence in the strip search area and his resumption of questioning Plaintiff while she was naked does not elevate the occurrence to a violation of Plaintiff's Fourth Amendment right to be free from an unreasonable search.  (Doc. 22, at 4); *see also Cavalier v. County of San Diego,* 2015 WL 3843984, at *10 (S.D. Cal. May 13, 2015) report and recommendation adopted in part, 2015 WL 3866077 (S.D. Cal. June 22, 2015) ("claims that non-supervisory and non-participatory actors were merely present or 'could' have participated in an

10

unreasonable search conducted by one of their peers are insufficient to support a claim of personal liability under *Iqbal*").

In sum, the FAC does not plausibly allege that Cosper was involved in a "search" of Plaintiff, and therefore fails to state a Fourth Amendment claim against Cosper.  As such, the City, Cosper's employer, likewise cannot be implicated in Plaintiff's Fourth Amendment claim. Nevertheless, the Court recognizes that amendment of the FAC is not futile, so long as Plaintiff is able to provide sufficient factual allegations that the search was still underway by the time Cosper entered, or that Cosper otherwise "integrally participated" in the search of Plaintiff.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) ("integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation"). Accordingly, the Motion to Dismiss Plaintiff's first cause of action insofar as it alleges that Cosper and the City violated her Fourth Amendment rights is GRANTED with leave to amend.

**D. FOURTEENTH AMENDMENT CLAIM**

The Fourteenth Amendment bars "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  Although the text of the Fourteenth Amendment makes no mention of an explicit right to privacy, the Supreme Court has recognized that "one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 (1977) (quoting *Roe v. Wade*, 410 U.S. 113, 152 (1973).  Only the rights that are "fundamental" or "implicit in the concept of ordered liberty" are included in the guarantee of personal privacy.  *Roe*, 410 U.S. at 153 (citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).

The Ninth Circuit has held that the right to privacy, under the Fourteenth Amendment, includes the right to shield one's naked body from view by persons of the opposite sex.  *York v. Story*, 324 F.2d 450 (9th Cir. 1963); *see also Sepulveda v. Ramirez*, 967 F.2d 1413 (9th Cir. 1992)

11

1   (citing *York* for the notion that there is a "right to bodily privacy"). In *York*, the plaintiff, a female,

2   went to the police department to file charges in connection with an assault on her. *Id.* at 452. One

3   of the police officers, acting under color of his authority and over the plaintiff's objections, directed

4   the plaintiff to undress and photographed her in the nude. *Id.* Other police officers then circulated

5   the photographs amongst members of the police department. *Id.* None of the police officers had

6   any lawful or legitimate purpose for their actions. *Id.* The court stated "[w]e cannot conceive of a

7   more basic subject of privacy than the naked body. The desire to shield one's unclothed figure

8   from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary

9   self-respect and personal dignity." *Id.* at 455. Regarding the novel factual scenario presented by

10   the plaintiff, the court commented, "[i]n the field of civil rights litigation the cases are not

11   infrequent in which law enforcement action not banned in terms by any provision of the Bill of

12   Rights had been made the subject of a successful claim." *Id. York* then concluded that the actions

13   of the police officers were a violation of the Fourteenth Amendment's Due Process Clause. *Id.* at

14   455-56.

15       In *Grummett*, the Ninth Circuit held that this right to bodily privacy under the Fourteenth

16   Amendment also applies in the prison context. 779 F.2d at 493-95. However, *Grummett* also held

17   that the privacy interests in a prison context can be restricted "to the extent necessary to further the

18   correctional system's legitimate goals and policies." *Id.* at 493. Specifically, because the right to

19   privacy is a "fundamental right," it can only be restricted if the limitation is "justified by a

20   compelling state interest." *Id.* at 494 (citing *Roe*, 410 U.S. at 155). The court additionally required

21   that the state interest be achieved by the "least intrusive means." *Id.* Under this standard, *Grummett*

22   held that in light of the state's interest in searching and surveilling inmates to maintain prison

23   security, the infrequent and restricted observation of male prisoners in various states of undress by

24   female guards was not "so degrading as to require [judicial] intervention." *Id.* at 495.

25       In the previous section, the Court determined that the FAC did not adequately allege that

12

Cosper was involved in a search of Plaintiff under the Fourth Amendment.  However, the

Fourteenth Amendment's right to privacy extends to violations of privacy that are not searches

within the meaning of the Fourth Amendment, and <u>does</u> plausibly apply to the allegations set forth

in the FAC.  *See York*, 324 F.2d at 454 (applying Fourteenth Amendment privacy analysis because

deciding Fourth Amendment issue would not resolve claims unrelated to actual search). The Court

will first discuss Cosper's liability before considering whether the City may be held liable.

### 1. **Cosper**

According to the FAC, Mixon conducted the strip search of Plaintiff in an area away from

male personnel.  (Doc. 16 ¶ 13).  After Mixon discovered contraband on Plaintiff during the strip

search, she summoned Cosper.  (*Id.*).  "He was just outside the strip search area and then returned

so that he could interrogate Plaintiff, while unclothed, in an attempt to gain further incriminating

information from her." (*Id.*).  "Cosper entered the strip search area and began interrogating

Plaintiff while she was in a state of undress, naked." (*Id.*).  Plaintiff does not explicitly allege that

Cosper saw her naked body.  (*See id.*).  However, the FAC's allegations certainly suggest plausibly

that Cosper viewed Plaintiff's naked body and questioned her while she was naked.  (*See id.*).

These factual allegations invoke the privacy protections of the Fourteenth Amendment's

Due Process Clause, as they plausibly suggest that Cosper viewed Plaintiff's naked body in a

context where she had a reasonable expectation of privacy.  *Grummett*, 779 F.2d at 493-94; *York*,

324 F.2d at 455; *Turner v. County of Los Angeles*, 2013 WL 5230663, at *5 (C.D. Cal. Sept. 16,

2013) (plaintiff's allegation that defendant "caus[ed] her to be naked in public view while walking

to the patrol car" infringed plaintiff's right to bodily privacy under the Fourteenth Amendment).  As

the FAC alleges that Plaintiff suffered "severe emotional shock and humiliation, with the resultant

stress" after the incident, it plausibly indicates that Plaintiff did not consent to the entry of Cosper

into the strip search area.  *See Doe v. Luzerne County*, 660 F.3d 169, 177 (3d Cir. 2011) (plaintiff's

objections to male defendants entering an area where she was unclothed were a relevant factor in

13

1    finding that her Fourteenth Amendment privacy rights were violated).  Moreover, the FAC's

2    allegation that Cosper questioned Plaintiff while she was naked about her alleged criminal activities

3    plausibly suggests that his observation of her was sustained and intentional.  *Cf. Hubbard v. De*

4    *Ochoa,* 2015 WL 1879983, at *5-6 (E.D. Cal. Apr. 23, 2015) (finding no Fourteenth Amendment

5    violation where the plaintiff was strip searched within view of male and female officers and nurses,

6    but made "no allegations that he was subject to prolonged observation by others while he was

7    unclothed, or that the officers and nurses did more than casually observe him in passing").

8         Because the events alleged in the FAC occurred at a county jail facility, the Court now

9    considers whether the invasion of Plaintiff's privacy was justified by any "compelling state

10   interest." *Grummett*, 779 F.2d at 494.  Cosper has set forth no explanation that could reasonably

11   serve as such a "compelling state interest" in either his Motion to Dismiss or any subsequent filing.

12   (*See* Docs. 19-1, 23).  He has not argued that any kind of emergency justified his entry into the strip

13   search area or necessitated his questioning of Plaintiff while she was undressed.  *Cf. Michenfelder*,

14   860 F.2d at 333-34 (finding that the male inmates' "limited right to bodily privacy" was

15   outweighed by prison's legitimate interest "in providing equal employment opportunities [to both

16   male and female guards] and the security interest in deploying staff effectively").  Thus, in the

17   motion to dismiss context, the Court must conclude that the FAC alleges an invasion of Plaintiff's

18   right to bodily privacy without justification.

19        For these reasons, Plaintiff has alleged "more than a sheer possibility that [Cosper] . . . acted

20   unlawfully."  *See Iqbal*, 556 U.S. at 678.  The FAC "has laid a foundation" for proving that

21   Cosper's actions "constituted an arbitrary intrusion upon the security of her privacy, as guaranteed

22   by the Due Process Clause of the Fourteenth Amendment."  *See York*, 324 F.2d at 456.

23   Accordingly, the Court will DENY Cosper's Motion to Dismiss Plaintiff's first cause of action

24   insofar as it relates to the Fourteenth Amendment.

25   //

14

## 2. **The City**

The FAC alleges that the City, "as a pattern or practice, failed to adequately insure that its employees follow established protocols prohibiting cross-gender strip searches or interrogations," and that the City was "aware of the inappropriateness of routine cross-gender strip searches of arrestees, as well as the interrogation of persons while naked, but failed to take adequate steps to prevent it from occurring." (Doc. 16 ¶ 13). The City moves to dismiss this cause of action, arguing that Plaintiff has failed to state a claim for municipal liability under *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S. 658 (1978).[4] (Doc. 19-1, at 8-9).

Under *Monell*, "it is not enough for a section 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of County Commis. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). "[I]n some circumstances[,] a policy of inaction, such as a policy of failing to properly train employees, may form the basis for municipal liability." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011). Specifically, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. To satisfy § 1983 for a failure to train claim, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id*. (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring

---

[4] The City also argues that because the complained-of events took place at the County jail facility, which is not in Lemoore and therefore is not controlled by the City of Lemoore, that it is impossible to hold the City liable for these events. (Doc. 19-1, at 9). However, Plaintiff alleges that the City failed to train its own officer, Cosper, properly. Assuming Plaintiff properly alleged Cosper's integral participation in a constitutional violation, the fact that the location of that violation was not controlled by the City is not dispositive.

1   proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan*

2   *County*, 520 U.S. at 410.  "A pattern of similar constitutional violations by untrained employees is

3   'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."

4   *Connick*, 131 S.Ct. at 1360 (internal citations omitted); *Canton*, 489 U.S. at 395.  To demonstrate

5   that the City is "deliberately indifferent," Plaintiff must show that the City's policymakers were on

6   "actual or constructive notice that a particular omission in their training program causes employees

7   to violate citizens' constitutional rights."  *Connick*, 131 S.Ct. at 1360.

8       Plaintiff's claim with respect to the City can only be construed as an allegation that the City

9   failed to provide Cosper with adequate training and/or supervision.  (Doc. 16 ¶ 13).  She has alleged

10  one incident of misconduct by Cosper and that his misconduct is rooted in the City's failure to train

11  him.  (*Id.*).  With regard to the City's role in Cosper's behavior, Plaintiff alleges that the City had

12  "established protocols prohibiting cross-gender strip searches or interrogations," and that the City

13  was "aware of the inappropriateness of routine cross-gender strip searches, as well as the

14  interrogation of persons while naked, but failed to take adequate steps to prevent it from

15  happening."  (*Id.*).

16      These allegations do not "plausibly suggest an entitlement to relief."  *Starr v. Baca*, 652

17  F.3d 1202, 1216 (9th Cir. 2011).  Although Plaintiff alleges that the City "failed to adequately

18  insure that its employees follow established protocols," she has alleged only one incident of

19  unconstitutional behavior committed by Cosper.  (Doc. 16 ¶ 13).  The failure to train Cosper alone

20  is "insufficient to establish [the City's] deliberate policy."  *See Blankenhorn*, 495 F.3d at 484; *see*

21  *also City of Canton,* 489 U.S. at 390-91("[t]hat a particular officer may be unsatisfactorily trained

22  will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted

23  from factors other than a faulty training program.").  Thus, the FAC does not provide sufficient

24  "factual content" that would allow this Court to draw the reasonable inference that the City was

25  deliberately indifferent towards Plaintiff's likelihood of suffering a constitutional violation, and be

therefore "liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678; *see also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1098 (E.D. Cal. 2012) (allegations were insufficient to survive motion to dismiss where they suggested the "existence of a custom or practice," but lacked "the specificity required to determine whether the complaint plausibly alleges a 'persistent and widespread' course of conduct" to support *Monell* liability); *cf. Williams v. County of Alameda*, 26 F. Supp. 3d 925, 957-58 (N.D. Cal. 2014) (denying defendants' motion to dismiss a *Monell* claim where the allegations were detailed and established a plausible nexus between the county's failure to train and the likelihood of constitutional violations in its jurisdiction).

Nevertheless, the Court notes that further allegations of plausible facts to support the claims regarding deficiencies in City's policies and procedures may cure the deficiency in Plaintiff's *Monell* claim. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir.2012). Plaintiff has requested leave to amend her complaint, in the event that the Court find her complaint in need of additional facts. (Doc. 21, at 3). Accordingly, the Court will GRANT the Motion to Dismiss Plaintiff's Fourteenth Amendment Claim against the City, with leave to amend. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever 'justice so requires,' Fed. R. Civ. P. 15(a)(2), and requests for leave should be granted with 'extreme liberality.'").

## II.    SECOND CAUSE OF ACTION: CALIFORNIA CONSTITUTION RIGHT TO PRIVACY

"The California Constitution, at article I, section 1, includes privacy as among the inalienable rights guaranteed to its residents." *Buzayan v. City of Davis*, 927 F. Supp. 2d 893, 902-03 (E.D. Cal. 2013). Plaintiff alleges that the strip search and interrogation at the county jail violated her right to privacy under the California Constitution and seeks monetary damages on account of the alleged violation. (Doc. 16 ¶ 20). All Defendants have moved for dismissal of this cause of action, arguing that "the provisions of the California Constitution do not provide Plaintiff

with a private right of action for recovery of monetary damages in this matter." (Doc. 19-1, at 10; Doc. 18-1, at 3).

The only published case[5] that addresses directly whether a violation of the California Constitution right to privacy in article I, section I can give rise to money damages is *Clausing v. San Francisco Unified School Dist.*, 221 Cal. App. 3d 1224 (1990). In *Clausing*, the appellants argued that the school district had an affirmative duty to protect the right of privacy, and requested not only injunctive relief, but also money damages, which the court deemed as a "difficulty" in the case. *Id.* at 1238. The court noted that although article I, section I enumerates "inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed." *Id. Clausing* explains as follows:

> "Although citizens have a private right of action against public entities for violation of the right to privacy, no case has ever held that California Constitution, article I, section I imposes a *mandatory duty* on public entities to protect a citizen's right to privacy. The constitutional mandate is simply that the government is *prohibited* from *violating* that right; if it does, an aggrieved citizen may seek an injunctive remedy in court."

*Id.* at 1238.

On this basis, *Clausing* found that article I, section 1 does not permit a private right of action for money damages and upheld the lower court's demurrer of a complaint that sought money damages for an alleged violation of the privacy provision in article I, section I. *Id.* The Court also

//

//

//

//

//

---

[5] The case that Defendants rely in their Motions to dismiss this cause of action, *Katzberg v. Regents of the University of California*, declined to address whether article I, section I of the California Constitution permits a plaintiff to recover money damages. *See* 29 Cal.4th 300, 313 n.13 (2002) ("We have no occasion to consider in the present case the circumstances under which the privacy clause of the state Constitution may support a cause of action for damages.").

1  finds persuasive the reasoning of *Bates v. Arata*, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008),

2  which, following *Clausing*, declined to recognize a private right of action for money damages based

3  on article I, section 1's right to privacy.[6]

4         *Clausing* controls this case, and Plaintiff's opposition does not persuade the Court

5  otherwise.  Plaintiff cites two California Court of Appeals decisions that reversed lower court

6  demurrers of complaints seeking money damages for alleged violations of the privacy provision in

7  article I, section I: *Payton v. City of Santa Clara*, 132 Cal. App. 3d 152 (1982), and *Porten v.*

8  *University of San Francisco*, 64 Cal. App. 3d 825 (1976).  However, unlike *Clausing*, which

9  explicitly addressed the issue, neither *Payton* nor *Porten* contain any analysis of the viability of the

10 prayer for relief but only briefly discussed how the facts in the respective complaints could amount

11 to a prima facie violation of article I, section I.  *Payton*, 132 Cal. App. 3d at 154-55; *Porten*, 64 Cal.

12 App. 3d at 832.  Moreover, both *Payton* and *Porten* were decided prior to *Clausing*.  Thus, Plaintiff

13 cannot rely on *Payton* and *Porten* to support her second cause of action because neither case held,

14 nor even considered, whether money damages were actually available as a remedy for a violation of

15 article I, section I.

16        Plaintiff additionally cites *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463 (1986), in

17 which the California Court of Appeals found that a plaintiff had stated a cause of action for

18 invasion of her privacy when a television camera crew entered her home without her consent and

19 filmed paramedics' unsuccessful attempt to administer medical care to her husband and the

20

21  ---

[6] Several district court cases appear to assume, without explicitly analyzing, that there is a private right of action for damages under California constitutional right to privacy. Two of these cases concern claims that arose within the context of the Federal Tort Claims Act (FTCA): *Meier v. United States,* 2006 WL 3798160 (N.D. Cal. Dec. 22, 2006) aff'd, 310 F. App'x 976 (9th Cir. 2009); and *Haiping Su v. Nat'l Aeronautics & Space Admin.,* 2013 WL 1663608 (N.D. Cal. Apr. 17, 2013) (relying on *Meier*). *Meier* concluded without any relevant analysis that money damages are available under the California's constitutional right to privacy and therefore that an FTCA claim premised upon that right is cognizable. 2006 WL 3798160 at *6. *Su* relied on *Meier* without further analysis of the issue. 2013 WL 1663608 at *10-11. Neither case discussed *Clausing*. The other cases are *Hansen v. California Dep't of Corr.*, 920 F. Supp. 1480 (N.D. Cal. 1996), *Craft v. County of San Bernardino*, 468 F. Supp. 2d 1172 (C.D. Cal. 2006) and *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal.2006).  *Hansen*, *Craft*, and *Trujillo* granted their respective plaintiffs' summary judgment motions on the California constitutional right to privacy claims and appear to assume, without deciding, that money damages are available.  In the absence of affirmative authority that clearly establishes a right to money damages under the California constitutional right to privacy, particularly in light of the contrary authority provided by *Clausing*, the Court declines to permit a cause of action for damages under the California Constitution's right to privacy.

videotape was broadcasted on the nightly news without her consent.  Plaintiff argues that under *Miller*, "[d]amages flowing from an invasion of privacy 'logically would include an award for mental suffering and anguish.'"  (Doc. 21 at 7).  However, the claims in *Miller* did not arise from the California Constitution, but rather, were based on a violation of the tort of invasion of privacy. 187 Cal. App. 3d at 1480-87.  Moreover, while *Miller* briefly discussed the California constitutional right to privacy, and noted that it encompassed the claims of the plaintiff, this discussion was separate from its finding that a tortious invasion of privacy could give rise to damages as a remedy. *Id.* at 1490-91.  As such, *Miller* cannot be construed as supporting a right of action for monetary damages under article I, section I.

For these reasons, the Court finds that California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages.  *Clausing*, 221 Cal. App. 3d. at 1238.  In light of this conclusion, the Court need not address Plaintiff's arguments that the actions of Mixon and Cosper at the county jail violated her state constitutional right to privacy because she seeks only money damages for the alleged violation of her constitutional right to privacy.  *See Twombly*, 846 F.2d 1202.  Moreover, amendment of her claim would be futile because, absent a showing of an ongoing violation, no other form of relief would be appropriate. *See Cook, Perkiss and Liehe*, 911 F.2d at 247 (upholding the dismissal of a claim without leave to amend where the defect in the pleading could not be cured).  Accordingly, the Court will GRANT Defendants' motion to dismiss this cause of action, with respect to all defendants, and without leave to amend.

## III.   THIRD CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under California law, the elements of a prima facie case for the tort of intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional

distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's conduct." *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,* 129 Cal. App. 4th 1228, 1259 (2005). Defendants Cosper, the City, and the County have moved to dismiss Plaintiff's IIED claim against them. The Court will address Cosper's arguments before addressing those of the City and the County.

### 1. **Cosper**

Cosper seeks dismissal of Plaintiff's IIED claim, arguing that he did not engage in any outrageous conduct and that "no facts are pled establishing such conduct," and that "no facts are pled to give the Court a reasonable inference that Defendants' conduct was intended to inflict injury or engaged in with the realization that injury would result." (Doc. 19-1, at 12.) He further argues that Plaintiff's "conclusory allegations" are "lacking in a factual basis" and are therefore "insufficient to support a claim of [IIED]." (*Id.*). His response to Plaintiff's opposition echoes these arguments. (Doc. 23, at 6.)

Like her prior claims, Plaintiff's IIED claim is rooted in the events at the county jail facility (Doc. 16 ¶ 13). With regard to the first prong of an IIED prima facie case, to be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community . . . Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (citing Rest.2d Torts, § 46, com. d.)). Here, the allegedly extreme and outrageous conduct was Cosper's entering the strip search area and questioning Plaintiff while she was undressed. (Doc. 16 ¶ 13). Plaintiff alleges these actions are "outrageous and unprivileged, [and] amount to a willful, intentional, and reckless disregard for the rights of Plaintiff." (*Id.* ¶ 23). Additionally, Plaintiff pled facts that gave context to Cosper's actions—specifically, that he had arrested her and

attempted to question her, and that his resumption of questioning her while she was undressed was done in retaliation for her earlier resistance.  (*Id.* ¶ 13) ("His actions were designed to shock and humiliate her, in an effort to coerce her into giving incrimination statements – which she had previously refused to do, and to retaliate against her for previously refusing to submit to his earlier interrogation.").  Thus, the Court finds that Plaintiff has pled specific facts attributing acts to Cosper that a reasonable trier of fact could find "extreme and outrageous." *Dillman v. Tuolumne County*, 2014 WL 1757235, at *11-12 (E.D. Cal. Apr. 30, 2014) (allegations that defendants strip searched plaintiff and ridiculed his naked body was sufficiently "extreme and outrageous" to survive motion to dismiss); *Turner*, 2013 WL 5230663, at *6 ("Plaintiff's allegations that [defendant] removed her from the apartment complex unclothed and placed her in a patrol car in full public view are 'plausibly suggestive' of a claim for relief based on [IIED].").

Plaintiff further alleges that Cosper's actions were "done for the purpose of causing [her] to suffer anxiety, mental anguish, and severe emotional and physical distress."  (*Id.* ¶ 23).  Because Plaintiff alleged that Cosper voluntarily entered the strip search area and voluntarily resumed questioning her while she was undressed, the Court finds that there is indeed enough of a factual basis to infer that Cosper's actions could be indicative of either intent to cause emotional distress, or reckless disregard of the probability of causing emotional distress.  *See Iqbal*, 556 U.S. at 679.

Finally, Plaintiff has pleaded facts sufficient to satisfy the third and fourth requirements of a prima facie IIED claim, as she alleges that Cosper's conduct "directly and proximately caused severed [sic] and protracted emotional distress to Plaintiff."  (Doc. 16 ¶ 24).  Plaintiff additionally alleges that she was "hurt and injured in her health, strength and activity, sustaining injury to her body and shock and injury to her nervous system and person," and believes that "said injuries will result in some permanent disability to her."  (*Id.* ¶¶ 25, 26).  Although these allegations are general, they nevertheless permit the Court to "draw the reasonable inference that [Cosper] is liable for the misconduct alleged," and are therefore sufficient to survive Cosper's Motion to Dismiss.  *See Iqbal*,

556 U.S. at 678.  Accordingly, the Court will DENY the Motion to Dismiss Plaintiff's IIED claim with respect to Cosper.

### 2.  The City and the County

The City and the County both seek dismissal of Plaintiff's IIED claim on the grounds of municipal immunity under the California Tort Claims Act.  (Doc. 18, at 5; Doc 19-1, at 13-14).  According to California Government Code § 815, "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public entity employee or any other person."  In her opposition to the motions, Plaintiff counters that the City and County can be liable because she has "plead[ed] compliance with the [Tort Claims Act]," and moreover appears to argue that the City and County may be vicariously liable under Government Code § 815.2(a).  (Doc. 21, at 10-11; Doc. 22, at 10-11).

"In California, a governmental entity can only be sued in tort pursuant to an authorizing statute or enactment." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 840 (9th Cir. 1996) (citing *Lopez v. S. Cal. Rapid Transit Dist*., 40 Cal. 3d 780, 785 n. 2 (1985)).  Thus, in order to state a claim for direct tort liability against the County or the City, Plaintiff must plead "a statutory basis showing that [each municipal entity] may be held liable for their claims." *Comm. for Immigrant Rights v. County of Sonoma*, 644 F. Supp. 2d 1177, 1208 (N.D. Cal. 2009); *see also de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 251 (2007) (direct liability of a public entity "must be founded on a specific statute either declaring the entity to be liable or creating a specific duty of care *apart from* the general tort principles embodied in [Civil Code § 1714]").  Here, Plaintiff has not pleaded a statutory basis by which either the City or the County may be held directly liable for IIED.  Moreover, Plaintiff's bare allegation that she has "plead[ed] compliance with the [Tort Claims Act]," which is unaccompanied by any factual support, is exactly the type of conclusory statement that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Nevertheless, as Plaintiff argues in her opposition, there may be a basis for holding the City

and County liable for the torts of their respective employees under the doctrine of respondeat superior.  *See Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383 (2010) (noting that "vicarious liability for the acts or omissions of a [public employee] is one of "two main exceptions to public entity immunity"). California Government Code § 815.2(a) provides: "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Furthermore, under California Government Code § 820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."  In *Hoff v. Vacaville Unified School Dist.*, the California Supreme Court explained that "[t]hrough this section [Government Code § 815.2(a)], the California Tort Claims Act expressly makes the doctrine of respondeat superior applicable to public employers."  19 Cal. 4th 925, 932 (1998).  Plaintiff alleges that both Cosper and Mixon were acting in their official capacities at the time of the events described in the FAC.  (Doc. 16 ¶¶ 9, 10).  Therefore, to the extent that the FAC adequately pleads the elements of IIED against Cosper and Mixon, it likewise adequately pleads the vicarious liability of the City and the County.  *Lawson*, 180 Cal. App. 4th at 1389.

In the previous section, the Court determined that Plaintiff adequately pleaded the elements of IIED against Cosper.  Mixon did not move to dismiss the IIED claim against her.  (*See* Doc. 18-1).  Neither the City nor the County addressed Plaintiff's claim that the City and the County may be vicariously liable for the torts committed by Cosper and Mixon.  (*See* Docs. 18-1, 19-1).  Therefore, the Court will DENY the City and the County's Motions to Dismiss Plaintiff's IIED claims against them.  *See Garcia v. City of Merced*, 637 F. Supp. 2d 731, 748-49 (E.D. Cal. 2008) (denying the city and police departments' respective motions to dismiss on the basis that vicarious liability under California Government Code § 815.2 applied in the case).

//

1    **IV.    FOURTH CAUSE OF ACTION: NEGLIGENT INFLICTION OF EMOTIONAL**

2    **DISTRESS**

3    Negligent Infliction of Emotional Distress ("NIED") is a form of the tort of negligence, to

4    which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug*

5    *Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993).  NIED is not an independent tort.  *San Joaquin*

6    *Deputy Sheriffs' Ass'n v. County of San Joaquin*, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012)

7    (citing *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992)).  All Defendants have moved to

8    dismiss Plaintiff's NIED claim, arguing that Plaintiff has failed to plead the elements of duty,

9    breach of duty, causation, and damages.  (Doc. 18-1, at 5-6; Doc. 19-1, at 13).

10    In the FAC, Plaintiff alleges that all of the named Defendants "breached their duty of due

11    care to Plaintiff," that their conduct "constituted breach of said Defendants' duty to Plaintiff to

12    insure that Defendants, and each of them, did not cause unnecessary or unjustified emotional or

13    physical harm to Plaintiff."  (Doc. 16 ¶¶ 31-32).  Furthermore, she alleges that "[i]t was reasonably

14    foreseeable that a breach of duty, by Defendants, and each of them, would cause emotional distress

15    to Plaintiff."  (*Id.* ¶ 32).  Therefore, it appears that Plaintiff is asserting a "direct victim" theory of

16    liability for NIED, under which her right to recover for emotional distress would arise from "the

17    violation of a duty owed directly to [her]."  *Wooden v. Raveling*, 61 Cal. App. 4th 1035, 1038

18    (1998).  In "direct victim" cases, "well-settled principles of negligence are invoked to determine

19    whether all elements of a cause of action, including duty, are present in a given case."  *Burgess,* 2

20    Cal.4th at 1073. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional

21    condition of the plaintiff is an object, recovery is available only if the emotional distress arises out

22    of the defendant's breach of some other legal duty and emotional distress is proximately caused by

23    that breach of duty."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).  The

24    existence of a duty is a question of law.  *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*,

25    48 Cal. 3d 583, 588, 257 (1989).

1    Plaintiff asserts that Defendants owed to her a "duty of due care," but does not specify what

2    this duty entails.  (Doc. 16 ¶ 31).  While it is true that under Civil Code § 1741, that there is a

3    general duty of "ordinary care to prevent others from being injured as a result of [one]'s conduct,"

4    *Lawson v. Safeway Inc.*, 191 Cal. App. 4th 400, 409 (2010), the California Supreme Court has held

5    that "there is no duty to avoid negligently causing emotional distress to another, and that damages

6    for emotional distress are recoverable only if the defendant has breached some other duty to the

7    plaintiff."  *Potter*, 6 Cal.4th at 984.  In her opposition filings, Plaintiff provides no further argument

8    regarding any purported duty owed to her by any of the Defendants.  (*See* Docs. 21, 22).  Therefore,

9    because Plaintiff has not adequately pleaded that any of the Defendants owed her a duty, the Court

10   will GRANT the Defendants' Motions to Dismiss Plaintiff's NIED claim with respect to all named

11   Defendants, without leave to amend.  *See Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1125

12   (E.D. Cal. 2014) ("A purported [NIED] claim fails in the absence of defendants' cognizable duty

13   owed in relation to plaintiffs").  The Court further finds that amendment as to this claim would be

14   futile, as the Court has been unable to identify any duty Defendants plausibly could have owed her

15   under the circumstances.

16   **V.    PUNITIVE DAMAGES**

17          Plaintiff seeks punitive damages against individual defendants Mixon and Cosper.  (Doc.

18   21, at 11; Doc. 22, at 11).  Cosper has moved to strike Plaintiff's prayer for punitive damages,

19   arguing that she has proffered insufficient factual assertions to support an award of punitive

20   damages.  (Doc. 19-1, at 14).  Mixon has not addressed Plaintiff's prayer for punitive damages.

21   (*See* Doc. 18-1).

22          As explained above, the Court has determined that Plaintiff stated a cognizable § 1983

23   claim against Cosper for his violation of Plaintiff's Fourteenth Amendment right to bodily privacy.

24   Section I.C.1, *supra*.  Punitive damages may be assessed in § 1983 actions "when the defendant's

25   conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others." *Castro v. County of Los Angeles*, 797 F.3d 654, 669 (9th Cir. 2015) (emphasis added) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Assuming the facts in the FAC to be true, Plaintiff has alleged plausibly that, by questioning her while she was nude, Cosper acted with reckless indifference to her Fourteenth Amendment rights. Thus, Cosper's request to strike Plaintiff's prayer for punitive damages in relation to her § 1983 claim is DENIED.

Cosper also moves to strike Plaintiff's prayer for punitive damages in connection with her surviving state law IIED claim. Under California Civil Code § 3294, the recovery of punitive damages may be allowed on a successful tort claim. *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1184 (E.D. Cal. 2005). Plaintiff has alleged that Cosper's acts, namely, questioning her while she was nude, was, at least in part, retaliation against her for her refusal to answer his questions while she was in the car with him. (Doc. 16 ¶ 14). "Allegations of retaliation are sufficient to infer intent to injure." *Neveu*, 392 F. Supp. 2d at 1184. Thus, at this stage, there is no basis for striking Plaintiff's punitive damages prayer with regard to her IIED claim.

For these reasons, the Court will DENY Cosper's Motion to Strike Plaintiff's claim for punitive damages.

## VI.    COSPER AND THE CITY'S REQUEST FOR JUDICIAL NOTICE

Cosper and the City have requested that the Court take judicial notice, pursuant to Federal Rules of Evidence 201(b)(2) and 201(c)(2), of true and correct copies of documents pertaining to Plaintiff's felony criminal conviction in the Superior Court of California, County of Kings, arising out of the events described in Plaintiff's FAC. (Doc. 19-2). They have done so to support their argument that Plaintiff's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a complaint seeking damages in a § 1983 action cannot proceed if a judgement in the plaintiff's favor "would necessarily imply the invalidity of [her] conviction or sentence." 512 U.S. at 487. On the other hand, if "the plaintiff's action, even if successful, will not demonstrate the

27

1  invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed

2  to proceed, in the absence of some other bar to the suit." *Id.* "In evaluating whether claims are

3  barred by *Heck*, an important touchstone is whether a § 1983 plaintiff could prevail only by

4  negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312

5  F.3d 1148, 1153–54 (9th Cir.2002) (quoting *Heck 512* U.S. at 487 n. 6).

6          Here, Plaintiff has conceded that her arrest by Cosper was lawful, and she does not allege

7  that she was falsely imprisoned.  (Doc. 22, at 11).  Her § 1983 claim arose out of the manner by

8  which Mixon conducted her strip search and Cosper's subsequent questioning of her, and does not

9  appear to have any bearing on any later criminal proceeding in state court.  (*Id.*).  Moreover, the

10  Court did not rely on any of the documents submitted in reaching its findings.  As such, *Heck* is

11  inapposite in this case, and Cosper and the City's Request for Judicial Notice is likewise moot.

12  **VII.    CONCLUSION AND ORDER**

13          For the reasons stated above:

14  1) Defendants' Motions to Dismiss (Docs. 18, 19) are **GRANTED IN PART** and **DENIED IN**

15      **PART**, as follows

16          a)  As to Plaintiff's Section 1983 Claim, the Motion is:

17              i.  **DENIED** as to any Fourteenth Amendment claim against Cosper,

18              ii.  **GRANTED WITH LEAVE TO AMEND** as to any First, Fourth, and Fifth

19                  Amendment claims against Cosper, and

20              iii.  **GRANTED WITH LEAVE TO AMEND** as to any *Monell* claim against the

21                  City,

22          b)  the Motion is **GRANTED WITHOUT LEAVE TO AMEND** as to Plaintiffs' claim

23              under the California Constitution right to privacy, as to all named Defendants;

24          c)  the Motion is **DENIED** as to Plaintiffs' IIED claims with regard to Cosper, the City,

25              and the County; and

1    d)   the Motion is **GRANTED WITHOUT LEAVE TO AMEND** as to Plaintiff's NIED

2          claims against all Defendants; and

3    2)   Cosper's and the City's Motion to Strike punitive damages is **DENIED**.

4

5          This Court has gone to great lengths to give Plaintiff direction on deficiencies regarding the

6    current pleadings.  The Court has limited time and fewer resources to become involved in drafting

7    pleadings beyond what it has done in this Order.  Plaintiff shall have twenty (20) days from

8    electronic service of this Order to file an amended complaint or give notice that she will stand on

9    the current FAC. If the pleadings are not sufficient at that point, the Court will rule in a succinct

10   manner, and no further leave will be granted.

11

12   IT IS SO ORDERED.

13   Dated:   __October 30, 2015__          ___/s/ Lawrence J. O'Neill__

14                                          UNITED STATES DISTRICT JUDGE